1

Daniel L. Germain (CA Bar No. 143334)
ROSMAN & GERMAIN LLP

2

16311 Ventura Blvd., Suite 1200
Encino, CA  91436-2152

3

Telephone: (818) 788-0877
Facsimile: (818) 788-0885

4

E-Mail: R&G@Lalawyer.com

5

Paul M. Fakler (NY Bar No. 2940435)

6

Ross J. Charap (NY Bar No. 1117381)
MOSES & SINGER LLP

7

405 Lexington Avenue
New York, New York 10174-1299

8

Telephone: (212) 554-7800
Facsimile: (212) 554-7700

9

E-Mail: pfakler@mosessinger.com

10

*Attorneys for Plaintiffs*

11

UNITED STATES DISTRICT COURT

12

CENTRAL DISTRICT OF CALIFORNIA

13

WESTERN DIVISION

14

15

Peermusic, III, Ltd., Songs of Peer,

16

Ltd., Peer International Corp.,

17

Peermusic Ltd., PSO Ltd., Southern
Music Publishing Co., Inc., WB Music

18

Corp., Warner-Tamerlane Publishing

19

Corp., Unichappell Music, Inc., Bug
Music, Inc., Windswept Holdings LLC

20

and Hitco Music Publishing, LLC,

21

22

*Plaintiffs*,
            v.

23

24

LiveUniverse, Inc. and Brad Greenspan,

25

*Defendants*.

Case No.: CV-09-6160-GW (PLAx)

**REPLY MEMORANDUM IN
SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

Date: May 13, 2010
Time: 8:30 a.m.
Courtroom: 10 (Hon. George H. Wu)

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY STATEMENT

In their moving papers, Plaintiffs[1] decisively established all of the elements necessary to obtain the requested preliminary injunction: (i) that there is a likelihood of success on the merits of their copyright infringement claims; (ii) that they are likely to suffer irreparable harm in the absence of preliminary relief; (iii) that the balance of equities tips in their favor; and (iv) that an injunction is in the public interest. *See Am. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ---, ---, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).  Because they cannot refute any of the evidence or argument set forth in Plaintiffs' moving papers, Defendants have filed short and incoherent opposition papers, which fail to address any of the relevant facts or law.  Defendants' attempts to deflect attention from their clear and willful infringement should be rejected, and Plaintiffs' motion for a preliminary injunction should be granted.

## ARGUMENT

### I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Defendants do not dispute that their use of Plaintiffs' lyrics on the Infringing Websites constitutes copying, public display and public distribution of those lyrics.  Nor do Defendants attempt to argue any of the affirmative defenses, such as fair use, that they actually pleaded in their Amended Answer.  Instead, on the question of likelihood of success on the merits, the only arguments advanced in defense are (i) Plaintiffs "only" submitted a representative sample of 150 of their copyright registration documents to the Court for the purposes of this motion; (ii) Defendants are immunized from the requested

---

[1] "Plaintiffs" refers to Plaintiffs Peermusic, III, Ltd., Songs of Peer, Ltd., Peer International Corp., Peermusic Ltd., PSO Ltd., Southern Music Publishing Co., Inc. (collectively "Peermusic"), WB Music Corp., Warner-Tamerlane Publishing Corp., Unichappell Music, Inc. (collectively "Warner/Chappell"), Bug Music, Inc., Windswept Holdings LLC and Hitco Music Publishing, LLC (collectively "Bug").

- 1 -

1  injunction by the Internet Service Provider ("ISP") "safe harbor" in the Digital Millenium

2  Copyright Act, 17 U.S.C. § 512(c) ("DMCA"); and (iii) Plaintiffs' request for injunctive

3  relief is barred by the doctrine of laches.  None of these arguments have merit.

4  **A.       Plaintiffs' Own Valid Copyrights**

5          In their Complaint, Plaintiffs have identified a large representative sample of their

6  songs that are being infringed on Defendants' websites, and have given the copyright

7  registration numbers for each of those songs.  Plaintiffs submitted full registration and

8  chain of title information for 150 of those songs, totaling over 800 pages of

9  documentation.  This is certainly sufficient evidence to establish a likelihood of success on

10  the merits, as is required to obtain a preliminary injunction.  Plaintiffs will submit evidence

11  for all of the songs for which they seek monetary damages with their summary judgment

12  motion, as required at that stage.

13          In their opposition papers, Defendants fail to put forward any legal or factual basis

14  to challenge Plaintiffs' proffer of copyright ownership evidence (and similarly do not even

15  attempt to claim that their use of hundreds of thousands of song lyrics is authorized by the

16  copyright owners of those songs).  Defendants do not, and cannot, cite a single case

17  supporting their argument that Plaintiffs' proffer of 150 copyright registrations and chains

18  of title is insufficient to warrant the grant of a preliminary injunction.  Defendants do not

19  challenge that Plaintiffs have clearly established that the infringement taking place every

20  day on the Infringing Websites is massive.  Indeed, Defendants admit that each website

21  features the lyrics to hundreds of thousands of songs.  Nor do Defendants dispute that they

22  have not obtained licenses from *any* of the copyright owners of these hundreds of

23  thousands of songs; notably missing from Defendants' opposition is any claim that a single

24  song is licensed.  Defendants thus ask this Court to ignore overwhelming evidence of

25  infringement, without denying the validity of such evidence or providing one scintilla of

26  evidence that their unauthorized use of hundreds of thousands of song lyrics is lawful.  The

27  only effective way to stop Defendant's brazen, willful and massive infringement is to shut

28  the websites down until such time as Defendants obtain licenses.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**B.**     **The DMCA Safe Harbor Is Not Applicable to Defendants**

In what can only be characterized as a bizarre argument, Defendants claim that they are immunized from a preliminary injunction by the ISP safe harbor provisions of the DMCA.  This argument fails for numerous reasons.  First, Defendants did not plead a DMCA affirmative defense in their Amended Answer, and have therefore forfeited any such defense.  Fed. R. Civ. P. 8(c); *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008).  Even if they had pled such a defense, however, it would be unavailable to Defendants.  First, in order to take advantage of the safe harbor provision of Section 512(c), an ISP must as a prerequisite have "designated an agent to receive notifications of claimed infringement . . . by [both (i)] making available through its service in a location accessible to the public, and [(ii)] by providing to the Copyright Office, substantially the following information:  (A) the name, address, phone number, and electronic mail address of the agent [and] (B) other contact information which the Register of Copyrights deems appropriate."  17 U.S.C. § 512(c)(2).  It is undisputed that Defendants failed to comply with either requirement (nor in their opposition papers do Defendants even claim that they did).  Search of the Copyright Office records available at http://www.copyright.gov/onlinesp/ shows that Defendants have never registered a designated DMCA notification agent with the Copyright Office.  [Fakler Reply Decl. ¶¶ 3-7 & Exs. 1-4].  Moreover, none of the Infringing Websites have the required contact information for a designated DMCA notification agent.  [Fakler Reply Decl. ¶ 8].  On this ground alone, Defendants are ineligible for the DMCA's safe harbor.

There are several other independently fatal flaws to Defendants' DMCA argument.  The safe harbor of Section 512(c) only applies to content that is copied onto the ISP's servers by third-party service users.  17 U.S.C. 512(c).  Although Defendants claim that (on only one of the Infringing Websites) users were given the *ability* to post lyrics to that one website, they do not dispute that the bulk of the lyrics even on that website were copied by the websites themselves and not any users.  The safe harbor is, therefore, inapplicable for this reason as well.  Finally, although the DMCA provides a qualified safe

- 3 -

1    harbor for monetary liability, it does not prevent courts from issuing injunctions to stop

2    infringing conduct, and expressly allows injunctions (even against qualified ISPs, which

3    Defendants are not) "restraining the service provider from providing access to infringing

4    material or activity residing at a particular online site on the provider's system or

5    network."  17 U.S.C. § 512(j).

6         Of course, there are other reasons why Defendants' cannot avail themselves of the

7    DMCA safe harbor, including the fact that they are on notice of massive infringement at

8    their own websites, profit directly from the infringement and have the right and ability to

9    control the infringing content on their own websites.  17 U.S.C. § 512(c)(1).  Moreover,

10   even after being sued in this case and being placed on clear notice of their own

11   infringement with respect to at least the several hundred songs identified in the Complaint,

12   Defendants still brazenly refuse to remove even those specifically identified songs from

13   the Infringing Websites.  [Fakler Reply Decl. ¶ 8].  Defendants' DMCA argument is a

14   sham.

15              **C.    Defendants Cannot Invoke Laches**

16        To prove laches, Defendants must establish that Plaintiffs *unreasonably* delayed in

17   bringing the action and that Defendants were prejudiced by such unreasonable delay.

18   *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 951 (9th Cir. 2001).  There is, however, no

19   evidence that Plaintiffs unreasonably delayed in filing this suit or that Defendants have

20   been unfairly prejudiced by any delay.

21        After repeatedly lying to Plaintiffs about their intent to obtain licenses, and their

22   ongoing attempts to frustrate the prosecution of this case by playing a months-long game

23   of musical chairs with their serially-retained counsel, Defendants have the temerity to

24   blame Plaintiffs for making this motion now, several months after filing the Complaint in

25   this action.  In their moving papers, Plaintiffs established that any delay in seeking relief

26   was a result of careful investigation, attempts to settle, and Defendants' own duplicity and

27   misconduct.  [Charap Decl. ¶¶ 9-25].  Defendants cannot rely upon such good faith efforts

28   by Plaintiffs and their own bad faith conduct to avoid a preliminary injunction.  *Gilder v.*

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  *PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991) (affirming preliminary injunction where

2  careful investigation of claim justified delay); *Ocean Garden, Inc. v. Marktrade Co., Inc.*,

3  953 F.2d 500, 508 (9th Cir. 1991) (affirming preliminary injunction and rejecting laches

4  argument where delay in bringing motion for injunction (i) did not prejudice defendant (ii)

5  was largely caused by defendant's conduct and (iii) included time spent in settlement

6  discussions); *Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1286 (C.D. Cal. 1997)

7  (granting preliminary injunction where delay was due to cease and desist and settlement

8  communications, including defendant's representation that it intended to settle).

9          Defendants' attempts to delay justice while profiting from their infringement

10  continue to this day.   Indeed, on the evening before its opposition papers for this motion

11  were due, Defendants attempted to obtain yet another 30-day extension of their time to

12  respond, even though they previously agreed to the current briefing schedule.  The only

13  ground advanced for the requested extension was that Mr. Greenspan was too busy with

14  his international travel plans to bother with this case.  [Fakler Reply Decl. ¶ 9 & Ex. 5].

15  Moreover, Defendants have still not served any responses to Plaintiffs' discovery requests

16  (served in December 2009), much less provided any of the requested discovery, even after

17  repeated promises to provide the discovery.  [Fakler Reply Decl. ¶ 10-14].  With such

18  unclean hands, Defendants can hardly be allowed to invoke an equitable defense based

19  upon Plaintiffs' alleged delay.  In any event, Defendants do not even attempt to explain

20  how they were unfairly prejudiced by any delay.

21  **II.    PLAINTIFFS WILL BE IRREPARABLY HARMED IN THE ABSENCE OF**

22          **AN INJUNCTION**

23          Plaintiffs established that they are being irreparably harmed by Defendants' ongoing

24  and massive infringement of their copyrights.  Defendants do not dispute any of Plaintiffs'

25  argument, but merely rely upon the same argument advanced above with respect to their

26  laches defense.  As noted above, Defendants should not be allowed to escape justice

27  because of the delays they caused.

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**III.    BALANCE OF HARDSHIPS AND PUBLIC INTEREST**

   Defendants have not disputed any of Plaintiffs' evidence or argument with respect to the balance of hardships or the public interest.

**CONCLUSION**

   Defendants have utterly failed to rebut Plaintiffs' evidence and argument presented in the moving papers, and instead attempt to argue an inapplicable DMCA defense and seek to profit from delay created by Defendants' own duplicity and misconduct.  For the reasons set forth above, Plaintiffs respectfully reiterate their request that the Court issue a preliminary injunction immediately halting the operation of the Infringing Websites until such time as Defendants can demonstrate that any lyrics contained in their websites, databases and servers that are not in the public domain have been licensed by the appropriate copyright owners.

Dated: May 7, 2010                              ROSMAN & GERMAIN LLP


                                                By:    /s/                                    .
                                                      DANIEL L. GERMAIN


                                                Daniel L. Germain (CA Bar No. 143334)
                                                ROSMAN & GERMAIN LLP
                                                16311 Ventura Blvd., Suite 1200
                                                Encino, CA  91436-2152
                                                Telephone: (818) 788-0877
                                                Facsimile: (818) 788-0885
                                                E-Mail: R&G@Lalawyer.com

                                                Paul M. Fakler (NY Bar No. 2940435)
                                                Ross J. Charap (NY Bar No. 1117381)
                                                MOSES & SINGER LLP
                                                405 Lexington Avenue
                                                New York, New York 10174-1299
                                                Telephone: (212) 554-7800
                                                Facsimile: (212) 554-7700
                                                E-Mail: pfakler@mosessinger.com

                                                Attorneys for Plaintiffs

- 6 -