Paul M. Fakler (*Admitted Pro Hac Vice*)
Ross J. Charap (*Admitted Pro Hac Vice*)
Eric Roman (*Admitted Pro Hac Vice*)
ARENT FOX LLP
1675 Broadway
New York, NY 10019
Telephone: 212. 484.3900
Facsimile: 212.484.3990
E-mail: fakler.paul@arentfox.com
E-mail: charap.ross@arentfox.com

Michael L. Turrill (CA Bar No. 185263)
Jeffrey R. Makin (CA Bar No. 252426)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
E-mail: turrill.michael@arentfox.com
E-mail: makin.jeffrey@arentfox.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

Peermusic, III, Ltd., et al.,

Plaintiffs,

v.

LiveUniverse, Inc., et al.,

Defendants.

Case No. CV 09-6160-GW (PLA)

**PLAINTIFFS' RENEWED MOTION FOR DEFAULT JUDGMENT UNDER FED. R. CIV. P. RULE 37(D)**

Hon. Paul L. Abrams
Hearing Date: May 17, 2011
Hearing Time: 10 AM

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to Rule 37 of the Federal Rules of Civil Procedure and this District's Local Rule 37, Plaintiffs Peermusic, III, Ltd., Songs of Peer, Ltd., Peer International Corp., Peermusic Ltd., PSO Ltd., Southern Music Publishing Co., Inc., WB Music Corp., Warner-Tamerlane Publishing Corp., Unichappell Music, Inc., Bug Music, Inc., Windswept Holdings LLC and Hitco Music Publishing, LLC (collectively "Plaintiffs") renew their motion for a court order granting a default judgment in Plaintiffs' favor against Defendants LiveUniverse, Inc. ("LiveUniverse") and Brad Greenspan ("Greenspan") (collectively "Defendants") as a sanction for Defendants' willful disobedience of the Court's March 24, 2011 Order (Doc. No. 175), which required Defendants to appear for their respective depositions in New York, New York, at the date and time noticed by Plaintiffs. The Court issued its March 24th Order due to Plaintiffs' failure to appear, as noticed, for their depositions in Los Angeles, California. This is now the second consecutive time that Defendants have failed to appear for deposition as noticed.

As required by Local Rule 37-1, the parties met and conferred by telephone on April 7, 2011 to discuss the dispute that forms the subject matter of this motion. Mr. Paul Fakler, Esq. participated in the April 7 call on behalf of Plaintiffs, and Mr. Joel Bennett participated on behalf of Defendants. The parties' counsel tried in good faith to resolve the issues of (i) Defendants' failure to appear *a second time* for their depositions, (ii) Defendants' repeated failure to meet their discovery obligations and to comply with multiple court orders requiring such compliance, (iii) their continued refusal to pay Plaintiffs the attorneys' fees that the Court has repeatedly ordered them to pay – most recently by April 4, 2011 – but were unable to come to any resolution of these issues. Plaintiffs were thus compelled by the circumstances to file this renewed motion for default under Fed. R. Civ. P. 37(d).

On Friday, April 8, 2011, Plaintiffs' counsel delivered Plaintiffs' portion of a Joint Stipulation re Plaintiffs' Renewed Motion for Sanctions Under Fed. R. Civ. P. Rule 37(D) to Defendants' counsel by email. Pursuant to L.R. 37-2.2, Defendants were required to provide their portion of the joint stipulation to Plaintiffs within seven days, *i.e.*, by Friday, April 15, 2011. That deadline has now expired and Plaintiffs have still not received Defendants' portion of the joint stipulation. Therefore, pursuant to L.R. 37-2.4, Plaintiffs are filing the instant motion as regular noticed motion with a **hearing date of Tuesday, May 17, 2011**.

Dated: April 18, 2011

ARENT FOX LLP

By: /s/ Jeffrey R. Makin
Paul M. Fakler
Ross J. Charap
Michael L. Turrill
Jeffrey R. Makin

Attorneys for Plaintiffs,
Peermusic, III, Ltd., et al.

# TABLE OF CONTENTS


Page

I. INTRODUCTORY STATEMENT ....................1

II. STATEMENT OF FACTS ....................3

A. Defendants' History of Discovery Abuses and Contempt of the Court's Orders ....................3

B. The Court's March 24th Contempt Order re Greenspan's Failure to Appear to Be Deposed As Noticed ....................3

C. Defendant Greenspan Fails for the Second Consecutive Time to Appear to Be Deposed In Direct Violation of the Court's March 24th Order ....................4

D. Current Scheduling Order ....................7

III. POINTS AND AUTHORITIES ....................8

A. The Court Has the Authority to Issue a Default Judgment Against Defendants For Their Continued Failure to Attend Their Depositions As Duly Noticed ....................8

B. Entry of Default Judgment Against Defendants Is Not Only Appropriate But the Circumstances of Defendants' Outrageous Conduct Compel Default ....................8

1. Public Interest In Expeditious Resolution and Court's Need To Manage Its Dockets Weigh In Plaintiffs' Favor ....................9

2. Factors of "Prejudice" and "Availability of Lesser Sanctions" Weigh In Plaintiffs' Favor ....................9

3. The Public Policy Factor Weighs In Plaintiffs' Favor ....................13

IV. CONCLUSION ....................13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Commodity Futures Trading Com'n v. Noble Metals Intern., Inc.*, 67 F.3d 766 (9th Cir. 1995) ....................9

*Henry v. Gill Industries, Inc.*, 983 F.2d 943 (9th Cir. 1993) .................... 11, 12

*Morris v. Martin*, 8 F.3d 28 (Table), 1993 WL 364345 (9th Cir. 1993) ....................9

*Wanderer v. Johnston*, 910 F.2d 652 (9th 1990).................... 9, 11, 13

**RULES**

Fed. R. Civ. P. 30(b)(6)....................8

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) ....................8

Fed. R. Civ. P. 37(d)(1)(A)(i) ....................9

Fed. R. Civ. P. 37(d)(3)....................10

L.R. 37-2.2 ....................13

# I. INTRODUCTORY STATEMENT

On March 24, 2011, the Court issued an Order in which it "reluctantly" declined to enter a default judgment against Defendants despite their latest in a long series of willful discovery violations. This Order was prompted by Plaintiffs' motion, requesting that a default be entered against Defendants for their failure to attend their duly-noticed depositions in Los Angeles, California on February 15-16, 2011. The Court found that Defendants conduct had been willful, its excuse of a medical emergency simply unbelievable, and acknowledged that Defendants' failure to attend their depositions was just another example of their continued failure to meet their discovery obligations, and that their conduct continues to impede the resolution of this case.

The Court declined to enter default judgment then, with the hope that – despite Defendants' prior conduct – a lesser sanction might encourage Defendants to attend their depositions, particularly in light of Defendant Greenspan's promise under oath that he would make himself available for his deposition at Plaintiffs' convenience. Based on that promise, the Court ordered Defendants to appear for their depositions at the time and place of Plaintiffs' choosing, but in any event before Monday, April 11, 2011. The Court also imposed monetary sanctions in addition to those that Defendants have still not paid, and ordered all outstanding sanctions paid by April 4, 2011.

Plaintiffs scheduled Defendants' depositions to begin on April 5, 2011 at the New York City offices of Plaintiffs' counsel. Plaintiffs' counsel gave Defendants (and their counsel) ample notice of these dates. Plaintiffs' counsel also repeatedly followed up with Defendants' counsel in an attempt to confirm that Defendants (and their counsel) would be appearing at their depositions, but received no substantive response.

All too predictably, neither Defendants nor their counsel appeared for the re-scheduled depositions. Instead, Defendant Greenspan waited until the morning that

the depositions were due to begin to announce he would not be appearing, and also hand-filed a frivolous motion for reconsideration with the Court on a *pro se* basis, despite being obviously represented by counsel. That motion was subsequently stricken by this Court. Also predictably, Defendants have still not paid any of the monetary sanctions that the Court ordered paid by April 4.

Respectfully, Defendants have been afforded more due process by this Court than they have shown themselves to deserve. Meanwhile, Plaintiffs remain in the same predicament they were in last month, when they filed their second motion for default against Defendants. The deadline for fact discovery has passed, the July 11, 2011 motion hearing cutoff in this case is fast-approaching, and Plaintiffs are faced with the prospect of preparing a summary judgment motion and possibly even conducting a trial without the benefit of the discovery that is their right under the Federal Rules of Civil Procedure. This case has been effectively stalled since August 2009 due to Defendants' various acts of misconduct and delaying tactics. During this period, Defendants have not meaningfully participated in this action in any way other than to cause delay. Indeed, although fact discovery lasted over a year, Defendants did not serve Plaintiffs with a single discovery request. Instead, Defendants have failed to meet their own discovery obligations and repeatedly and willfully violated and ignored this Court's numerous orders compelling compliance with discovery and imposing every sanction possible short of default on Defendants for their continued intransigence and misconduct. Default judgment is certainly not an appropriate sanction in most instances. In the circumstances of this case, however, it is, respectfully, the only appropriate remedy.

For these reasons, and those set forth in greater detail below, Plaintiffs respectfully renew their motion for an order entering default judgment against Defendants. There is no question that Defendants fully intend to continue their pattern of disobedience and delay. No lesser sanction has worked thus far, and no lesser sanction will work to make Defendants participate in these proceedings.

Plaintiffs urge the Court finally to put an end to Defendants' mockery of the judicial process by imposing the well-deserved sanction of default.

## II. STATEMENT OF FACTS

### A. Defendants' History of Discovery Abuses and Contempt of the Court's Orders

Defendants' long and torturous history of discovery abuses and repeated disregard for this Court's orders has already been described in grueling detail in numerous discovery motions previously filed by Plaintiffs and in the declarations supporting those motions. It was described most recently in Plaintiffs' Motion for Rule 37(d) Sanctions, filed on March 1, 2011 (Doc. No. 167) and in the supporting declaration of Paul M. Fakler (Doc. No. 167-1). Plaintiffs respectfully incorporate herein the facts described in that previous filing, so as to avoid burdening the Court with yet another recitation of Defendants' abusive and contemptuous behavior.

### B. The Court's March 24th Contempt Order re Greenspan's Failure to Appear to Be Deposed As Noticed

On March 24, 2011, the Court issued the most recent in a long line of orders finding Defendants to be in contempt of Court. Fakler Decl., ¶ 4 and Ex. 1 (the "March 24th Order"). The Court issued its March 24th Order in response to Plaintiffs' previous Motion for Rule 37(d) sanctions (Doc. No. 167), which requested that the Court grant a default judgment in Plaintiffs' favor for, among many other things, (i) Defendants' continued failure to pay Plaintiffs the attorneys' fee award that Defendants were first ordered to pay in September 2010 (*see* Doc. No. 160), and (ii) at Defendant Brad Greenspan's failure to appear on February 15-16, 2011 in Los Angeles, CA for his deposition and that of LiveUniverse. *Id.*

In its March 24 Order, the Court found (as it also did in connection with Plaintiffs' earlier contempt motion, made with respect to Defendants' failure to provide discovery) that it would be within its discretion to award the default judgment that Plaintiffs requested. *Id.*, Ex. A at p. 6. However (and again as it also did in connection with Plaintiffs' earlier contempt motion), the Court decided to

exercise leniency and award lesser sanctions instead, namely (i) additional monetary sanctions payable (along with the prior unpaid attorneys fee award) by April 4, 2011 and (ii) a requirement that Brad Greenspan appear for his deposition and the LiveUniverse deposition at the time and place of Plaintiffs' choosing, but in any event before Monday, April 11. *Id.*, Ex. A at pp. 6-7. The Court characterized these lesser sanctions as "***one final opportunity*** [for Defendants] to come into complete compliance with the Court's Orders." *Id.*, Ex. A at p. 6 (emphasis supplied).

### C. Defendant Greenspan Fails for the Second Consecutive Time to Appear to Be Deposed In Direct Violation of the Court's March 24th Order

Given that the depositions had to be completed by Monday, April 12, the latest possible dates on which Plaintiffs could reschedule the depositions were in the week of April 4. Fakler Decl., ¶ 6. As two depositions had to be scheduled, and given Mr. Greenspan's past behavior at Court hearings and in the transcribed discovery meet and confer previously reviewed by this Court, Plaintiffs' counsel considered it likely that those two depositions would take at least three days. *Id.* Consequently, Plaintiffs scheduled the depositions to begin on Tuesday, April 5, 2011. *Id.*

Plaintiffs' counsel promptly sent Defendants' counsel an e-mail just before noon (Pacific Time) on Monday, March 28, informing him of the new dates and also informing him that Plaintiffs had opted to take the depositions at the New York City offices of Plaintiffs' counsel, as explicitly permitted by the March 24th Order. *Id.*, ¶ 7. To be certain that there would be no miscommunication or excuses, Plaintiffs' counsel also copied Mr. Greenspan directly on this e-mail. *Id.*, Ex. 2.

At no time did Mr. Bennett inform Plaintiffs' counsel that he would be unavailable on the scheduled deposition dates, or otherwise object to Plaintiffs' rescheduling of the depositions. *Id.*, ¶ 8. Indeed, for some time Mr. Bennett did not respond at all to Plaintiffs' counsel's March 28th e-mail. Plaintiffs' counsel sent

Mr. Bennett a follow-up e-mail on Thursday, March 31, 2011, asking him to confirm that he and Mr. Greenspan would be appearing for the rescheduled depositions. *Id.,* ¶8 and Ex. 3. Plaintiffs' counsel was particularly interested in confirming that Mr. Bennett would be appearing, because Mr. Bennett had previously chosen not to appear at either of the two non-party depositions taken by Plaintiffs in this case; he opted instead to participate by phone. *Id.*, ¶ 8. Mr. Bennett did not respond to Plaintiffs' counsel's March 31st e-mail. *Id.*

With the deposition dates rapidly approaching and still no response from Defendants to Plaintiffs' earlier e-mails, Plaintiffs' counsel sent Mr. Bennett yet another follow-up e-mail on Friday, April 1st. *Id.*, ¶ 9 and Ex. 4. This time, Mr. Bennett responded, but only to say that he was trying to confirm with his clients that they would be appearing for their depositions and promised to get back to Plaintiffs' counsel with an answer. *Id.*, ¶ 9 and Ex. 5. Plaintiffs' counsel responded, asking Mr. Bennett whether he was planning to attend in person the depositions in New York City. *Id.*, ¶ 9 and Ex. 6. Plaintiffs' counsel did not hear back from Mr. Bennett that Friday, nor did he receive any response from Mr. Bennett over the weekend. *Id.*, ¶ 9.

Having not heard back from Mr. Bennett, on Monday, April 3, 2011 (the day before the depositions were scheduled to begin), Plaintiffs' counsel sent Mr. Bennett yet another follow-up e-mail. *Id.*, ¶ 10 and Ex. 7. This time Mr. Bennett responded, stating that he had forwarded Plaintiffs' counsel's earlier e-mail to Mr. Greenspan and that he would respond as soon as he had received an answer from his client. *Id.*, ¶ 10 and Ex. 8. In the end, Mr. Bennett never responded to Plaintiffs' counsel's repeated questions about whether he or his clients would be appearing for Defendants' duly noticed depositions in New York City. *Id.*

Instead, after midnight on the morning the depositions were scheduled to begin, Plaintiffs' counsel received an e-mail directly from Defendant Greenspan, in which Defendant Greenspan claimed he had personally hand-filed a "motion for

reconsideration" with this Court and announced that he would not be appearing for the scheduled depositions. *Id.*, ¶11 and Ex. 9.

Mr. Bennett remains counsel of record for both Defendants in this action. *Id.*, ¶ 12. At no time leading up to the depositions did Mr. Bennett indicate to Plaintiffs or to this Court that he was no longer representing Defendants in this case. *Id.* Nonetheless, Mr. Greenspan filed his "motion" *pro se*, which is impermissible under the Local Rules of this District, as he is represented by counsel and which he was not permitted to do in any event on behalf of the corporate Defendant LiveUniverse. *Id.* Recognizing this, the Court ordered Defendant Greenspan's motion stricken on April 6, 2011 (*see* Doc. No. 180).

Contrary to the allegations in Mr. Greenspan's "motion," which are not supported by any sworn testimony or other admissible evidence, Mr. Greenspan has never appeared for any deposition in this case. *Id.*, ¶ 13. There have been only two depositions in this case. *Id.* Both were depositions of non-parties. *Id.* Plaintiffs were forced to depose these non-parties largely due to Defendants' total failure to cooperate in discovery. *Id.* The first deposition was of LiveUniverse employee Joe Cipolat. *Id.* Neither Defendants nor their counsel cooperated in any way with this deposition. *Id.* To the contrary, when Plaintiffs' counsel asked Mr. Bennett whether he would be representing Mr. Cipolat and could assist with service of the subpoena, he stated unequivocally that he was not representing Mr. Cipolat. *Id.*, ¶ 13 and Ex. 10. Plaintiffs then attempted to contact Mr. Cipolat multiple times, both by phone and e-mail, to coordinate service of the subpoena. *Id.* Mr. Cipolat ignored these attempts. *Id.* Consequently, Plaintiffs were forced to have a process server attempt service multiple times on Mr. Cipolat after which he was finally served. *Id.* Only after he was served did Mr. Cipolat finally respond to Plaintiffs' counsel's communications. *Id.*

Rather than attend the deposition, which was taken in New York because Mr. Ciplolat lives and works in this area, Mr. Bennett requested that Plaintiffs arrange

for him to participate in the deposition by phone. *Id.*, ¶ 14. Plaintiffs accommodated Mr. Bennett's request as a courtesy. *Id.* Then, for the first time at the deposition itself, Mr. Bennett reversed course and announced that he was representing Mr. Cipolat after all. *Id.* Mr. Greenspan did not participate in any way in the deposition. *Id.* This can hardly be characterized as an example of Defendants' cooperation with *this* deposition, and much less so as an example of Mr. Greenspan "appearing" for any deposition. *Id.*

The only other deposition in this case was that of non-party Mark Elfenbein. *Id.*, ¶ 15. Mr. Elfenbein is a former employee of LiveUniverse, but is no longer associated in any way with the company. *Id.* As with Mr. Cipolat's deposition, Plaintiffs had difficulty serving Mr. Elfenbein with a subpoena and neither Defendants nor Mr. Bennett cooperated or assisted in any way with securing his attendance. *Id.* Indeed, the address Defendants provided for Mr. Elfenbein in their interrogatory responses was completely incorrect. *Id.* Again, Mr. Bennett asked to participate by phone, which Plaintiffs' counsel arranged. *Id.* This also cannot be deemed an example of Mr. Greenspan's appearance for a deposition or of his cooperation with any deposition. *Id.*

Fact discovery has been closed in this case since February 18, 2011, yet Defendants have not served a single discovery request on Plaintiffs. *Id.*, ¶ 16. It is clear that Defendants have no intention of meaningfully participating in these proceedings or in the judicial process as a whole. They have not done so thus far, but have chosen instead to do nothing but the absolute minimum necessary to keep the case bogged down procedurally and cause Plaintiffs to endure unfair expense and delay. *Id.*

**D. Current Scheduling Order**

The remaining scheduling order deadlines for this case, which have already been extended several times due to Defendants' discovery delays and changes of counsel, are as follows:

- motion hearing cutoff set for July 11, 2011;
- pretrial conference set for August 4, 2011; and
- trial set for August 16, 2011 at 9 a.m.

*See* November 15, 2010 Amended Scheduling Order (Doc. No. 148).

## III. POINTS AND AUTHORITIES

### A. The Court Has the Authority to Issue a Default Judgment Against Defendants For Their Continued Failure to Attend Their Depositions As Duly Noticed

The Federal Rules of Civil Procedure authorize a court to order sanctions if a party or a party's 30(b)(6) witness fails to appear for a noticed deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Entry of default judgment is one of the sanctions available for failure to attend a deposition. Among the sanctions available under Rule 37(d) are any type of sanction listed in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37 (d)(3). Rule 37 (b)(2)(A)(iv) permits the granting of a default judgment against the disobedient party. Accordingly, the Court has the authority to issue a default judgment against Defendants in this instance.

### B. Entry of Default Judgment Against Defendants Is Not Only Appropriate But the Circumstances of Defendants' Outrageous Conduct Compel Default

This is the *second consecutive* time Defendants have failed to appear for their noticed depositions. Moreover, in failing to appear yet again, they have also directly violated this Court's March 24th Order directing them to appear at the date, time and place noticed by Plaintiffs. This Court is not only justified but, respectfully, is compelled, under the circumstances, to issue a default judgment in Plaintiffs' favor. Indeed, the Court has previously found that Defendants' prior discovery misconduct, even without Defendants' later failures to appear for their depositions, was sufficient to justify an entry of default. (Docket No. 161, p. 13).

To determine whether entry of default would be appropriate, courts in the Ninth Circuit consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3)

the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Moreover, a district court has the discretion to impose the extreme sanction of dismissal if there has been "flagrant, bad faith disregard of discovery duties." *Id.* at 655-56; *see also*, *Commodity Futures Trading Com'n v. Noble Metals Intern., Inc.*, 67 F.3d 766, 771 (9th Cir. 1995) ("To justify the imposition of such a harsh sanction, the district court must find that the violations were 'due to willfulness, bad faith, or fault of the party.'") (internal citations omitted).

Each of these factors is all too easily satisfied in this case.

**1. Public Interest In Expeditious Resolution and Court's Need To Manage Its Dockets Weigh In Plaintiffs' Favor**

The first two factors, the public's interest in expeditious resolution of litigation and the court's need to manage its dockets "favor the imposition of sanctions in most cases. *Wanderer*, 910 F.2d at 656. Here, both have been hampered by Defendants' pattern of delaying its compliance, and ultimately failing to comply, with its discovery obligations, including Defendants' refusal – now for the second time – to appear for their depositions. Defendants' conduct continues to drag out the case schedule, which has already been extended several times due to Defendants' previous failures to provide discovery and obey Court orders. *Morris v. Martin*, 8 F.3d 28 (Table), 1993 WL 364345, *2 (9th Cir. 1993) (First two factors satisfied where failure to cooperate with discovery extended litigation schedule).

**2. Factors of "Prejudice" and "Availability of Lesser Sanctions" Weigh In Plaintiffs' Favor**

The factors of prejudice and availability of lesser sanctions are the "key factors" in the analysis. *Wanderer*, 910 F.2d at 656. Both of these factors are present here and favor the rendering of a default judgment.

With respect to the prejudice to Plaintiffs caused by Defendants' failure to appear at the depositions, Defendants' repeated and continuing failures to meet

their discovery obligations and to show up for their depositions have closed off all other avenues available to Plaintiffs to obtain the information necessary to prosecute the case. As discussed above, and as described by the Court in its Report and Recommendation Re: Plaintiffs Motion for Imposition of Sanctions, filed January 26, 2011 (Doc. No. 161), Defendants have failed to produce any documents whatsoever in response to many of Plaintiffs' document requests and have failed to make a complete production in response to any of them; have failed to explain their lack of effort in collecting and producing responsive documents, have failed to adequately answer interrogatories; have failed to comply with Court orders to correct the aforementioned failures; have failed to pay the monetary sanctions assessed against them, including the attorneys fees they have repeatedly been ordered to pay; and are now embarking on a pattern of refusing to even attend their depositions.

The Court has already repeatedly issued lesser sanctions, both monetary and non-monetary, against Defendants in hopes of inducing them to comply with the Court's orders. Those sanctions have simply failed to cause Defendants to take their discovery obligations seriously. *See, e.g.,* Fakler Decl., Ex. 1 (March 24th Order) at p. 6 ("Despite multiple Court orders, the imposition of monetary and evidentiary sanctions, and numerous opportunities to come into full compliance, defendants have continued to fail to meet their discovery obligations, and that conduct continues to impede the resolution of this case.").

The non-monetary sanctions already imposed, although less than a finding of default, have been quite severe. They include precluding Defendants from using any evidence they have failed to produce to Plaintiffs, and striking some (though not all) of Defendants' affirmative defenses. But the non-monetary sanctions that have already been imposed, as severe as they are, will not remedy Plaintiffs' inability to obtain the discovery they need to prosecute their own claims. Depositions of the Defendants are the only remaining device available to Plaintiffs

to obtain the full discovery needed to prove their case. Defendants are clearly intent on frustrating these as well. And now, by ignoring what the Court itself characterized as one "last chance" to appear for their depositions, Defendants have once again demonstrated that there is no Court order or admonition that will ever induce them to comply with their discovery obligations. Any sanction short of default will allow Defendants to continue to unfairly benefit from their long and repeated pattern of misconduct.

The Ninth Circuit, in *Wanderer v. Johnston*, in affirming a default judgment against a party guilty of similar discovery abuses, stated it thus: "[T]he failures of the defendants to appear at their depositions, which were compounded by repeated noncompliance with court orders to produce documents constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case. The existence of prejudice is palpable." *Wanderer*, 910 F.2d at 656.

Defendants may argue that they offered to reschedule their depositions and therefore the imposition of sanctions is premature. But the offer to reschedule does not mitigate the failure to appear. *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 947 (9th Cir. 1993). In *Henry v. Gill*, the deponent twice cancelled his deposition the day before it was scheduled to take place and offered to reschedule it. *Id.* The Ninth Circuit held that by offering to reschedule, a deponent does not shift responsibility back on the party taking the deposition. *Id.* The deponent has still failed to appear and is subject to sanctions. *Id.* In this case, Defendants has done more than simply fail to appear. They *refused* to appear at the rescheduled depositions, despite having earlier promised in a signed declaration that they would appear. Defendants' promises, even when made under oath, are worthless.

In short, this Court has already awarded escalating monetary sanctions. It has struck affirmative defenses. It has precluded Defendants' use of certain evidence. And most recently, it gave Defendants a second opportunity to appear for their depositions based primarily on Defendant Greenspan's now laughable promise

that that he "would make [him]self available as was convenient for Mr. Fakler including the next few days to be deposed." (Doc. No. 170, Greenspan Decl., ¶ 12).

Despite it all, Defendants still refuse to comply with the Court's orders. In light of the earlier failed attempts to obtain compliance using sanctions falling short of a default judgment, there is no reason to expect that Defendants "would respond more satisfactorily to a second round of intermediate sanctions than [they] did to the first." *Henry v. Gill Industries, Inc.*, 983 F.2d at 948.

Defendants' conduct certainly rises "to the level of 'willfulness, bad faith, or fault'" necessary to justify dismissal. *Id.* Each of the earlier discovery failures and the violations of the Court's orders were the result of a conscious decision by Defendants not to comply with their obligations. Defendants' failure to appear at their depositions is no different.

The last time Defendant Greenspan failed to appear for deposition, he made a claim of a medical emergency that – as the Court itself stated in its March 24th Order – was "far from compelling." In fact, the Court explicitly found that in the circumstances of Defendant Greenspan's last failure to appear for deposition, "[w]illfulness, fault and/or bad faith on the part of Mr. Greenspan has clearly been demonstrated" and that "even accepting all of his statements concerning the events of that day as true, Mr. Greenspan has continued to show a complete disregard for his obligations in this proceeding." Fakler Decl., Ex. 1 (March 24th Order) at pp. 5-6.

In this instance, Defendant Greenspan did not even make a pretense at blaming his failure to appear on the intervention of unforeseen circumstances. Rather, he waited until the morning of the date of the deposition and announced that he simply would not be showing up. There is no question that Defendants' history of fabrication and willful refusal to obey direct orders from the Court amply justifies the imposition of a default. *Henry v. Gill Industries, Inc.*, 983 F.2d at 948-49.

**3. The Public Policy Factor Weighs In Plaintiffs' Favor**

Finally, even the remaining factor, the public policy favoring adjudication on the merits, which usually "cuts against a default or dismissal sanction," (*Wanderer*, 910 F.2d at 656 ) cuts in favor of default in this instance, as Defendants have amply demonstrated that they are not at all interested in participating in the judicial process.

They never provided Plaintiffs with the full and complete discovery responses mandated by the Court's repeated orders. They have never served Plaintiffs with a single discovery request of their own. Fakler Decl., ¶ 16. On most occasions, Mr. Greenspan has failed to show up at scheduled court appearances even when ordered to attend. When faced with motions Defendants have only rarely opposed them. Defendants have never once provided Plaintiffs with their portion of a joint stipulation in connection with any of the many discovery motions that Plaintiffs have filed in this action, as required by Local Rule 37-2.2.

In short, Defendants have demonstrated absolutely no interest in having this case adjudicated on the merits, or even mounting a substantive defense. As such, the public policy factor also weighs in Plaintiffs' favor.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their renewed motion under Fed. R. Civ. P. Rule 37(d) for an order entering a default judgment in Plaintiffs' favor as a sanction for Defendants' misconduct and contempt of this Court's orders.

Dated: April 18, 2011

ARENT FOX LLP

By: /s/ Jeffrey R. Makin
Paul M. Fakler
Ross J. Charap
Eric Roman
Michael L. Turrill
Jeffrey R. Makin

Attorneys for Plaintiffs,
Peermusic, III, Ltd., et al.