# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEERMUSIC, III, LTD., et al.,<br>   Plaintiffs,<br>  v.<br>LIVEUNIVERSE, INC., et al.,<br>   Defendants. | No. CV 09-6160-GW (PLAx)<br>**FINAL RULING ON MOTION FOR DEFAULT JUDGMENT** |

  In its Tentative Ruling on Plaintiffs' Motion for Final Default Judgment ("Default Motion"), this Court held that the six factors delineated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), when considered in the circumstances of the present case, weighed in favor of granting the requested default judgment. *See* Docket No. 212 at 3-7. Defendants' infringements of Plaintiffs' copyrights were determined to be "willful." *Id.* at 5-8. The Court also found that Plaintiffs were entitled to permanent injunctive relief. *Id.* at 7.

  However, the Court indicated there were questions as to the amount of damages and requested further briefing on that subject. Plaintiffs have provided further materials. *See* Plaintiffs' Supplemental Memorandum, Docket No. 213. Pursuant to that filing, the Court now concludes that the number of copyrighted songs which were infringed by the Defendants is 528 not 463 as originally determined in the Tentative Ruling. The Court based the initial number of infringed songs on the lists attached to the Complaint. *See* Docket No. 1, Exhibits 1 through 3. However, as pointed out by

Plaintiffs in their Supplemental Memorandum, they had submitted declarations and concomitant exhibits with the Default Motion which delineated for each infringed song owned by a Plaintiff - "the song title, the songwriters and the URL of the page on at least one of the Infringing Websites upon which the song's lyrics were displayed." *See* Docket No. 211-4, Declaration of Paul M. Fakler at page 3 of 8 and Exhibits 11 through 13. That showing establishes that at least 528 songs were infringed.

Because this Court found Defendants' infringements to be "willful" and because Plaintiffs elected to recover statutory damages under 17 U.S.C. § 504(c)(2), the Court held that the statutory maximum in this case was $150,000 per song. The Plaintiffs seek $100,000 per song. In considering the issue, this Court requested additional submissions as to the licensing fees which Defendants would have been charged had they properly obtained licenses to use the copyrighted lyrics in the first place. As stated in the Tentative Ruling (Docket No. 212 at 8-9):

> Plaintiffs request $100,000 per infringed song. Defendants' actions in this case warrant statutory damages that will adequately deter future infringement of this nature. Additionally, Defendants have willfully infringed upon Plaintiffs' copyrights even after being sanctioned both by this Court and Magistrate Judge Abrams. Their blatant disregard for the civil justice system favors a substantial damages award. Nevertheless, due to the scale of the infringement, an award of damages in the amount requested by Plaintiffs would result in a ridiculously huge judgment . . . .
> However, as noted in *Nimmer on Copyright* § 14.04[B][3][c] at 14-82 (Matthew Binder, Rev. Ed.), "Just because a defendant is held willful does not in itself necessitate imposition of heightened statutory damages. [Footnote omitted.]" While this Court is inclined to award statutory damages on the 463 songs that were infringed, the amount should be related, at least in part, to the licensing fees that would have been generated had Defendants obtained permission for their use of those lyrics. *See Id.* § 14.04[E][1][a] at 14-93 to 14-96. That is not to say that statutory damages must be based on the actual damages suffered by the Plaintiffs. However, to avoid a ridiculously disproportionate damage award, the Court will inquire as to [the subject] of licensing rates at oral argument.

Plaintiffs' Supplemental Memorandum did not provide information as to what

the licensing fees would have been for the songs at issue herein, even though such information is readily available to them.  Instead, they initially argue that this Court should not set the amount of statutory damages based upon a relationship to compensatory damages.  However, in seeking to learn of the licensing rates for the infringed songs, this Court did not intend to set the statutory damages in an amount based simply on the loss of licensing revenues.  As noted in 4 *Nimmer of Copyright* § 14.04[B][1][a] at 14-69 to 14-70:

> In the absence of a jury trial, it has been said the determination of statutory damages within the applicable limits may turn upon such factors as "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind - whether willful, knowing, or merely innocent."

(Footnotes omitted, and quoting *N.A.S. Import Corp. v. Chenson Enters. Inc.*, 968 F.2d 250, 252 (2nd Cir. 1992)).  Indeed, in the Ninth Circuit, it has been recognized that statutory damages serve a valid punitive purpose.  In *L.A. News Serv. v. Reuters TV Int'l*, 149 F.3d 987, 996 (9th Cir. 1998), it was observed that:

> The district court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (citing *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 63 L. Ed. 499, 39 S. Ct. 194 (1919)).  The court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232, 97 L. Ed. 276, 73 S. Ct. 222 (1952)).  Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant," *Harris*, 734 F.2d at 1335, in order "'to sanction and vindicate the statutory policy' of discouraging infringement." *Peer Int'l Corp.*, 909 F.2d at 1337 (quoting *Woolworth Co.*, 344 U.S. 228 at 233).

This Court believes that statutory damages based on a single digit multiple of lost licensing revenues is a good *starting* point for calculating statutory damages.  *See generally Broadcast Music, Inc. v. Kiflit*, 2012 U.S. Dist. LEXIS 142752 *11-12 (N.D.

Ca., Oct. 2, 2012); *New World Music Co. v. Tampa Bay Downs, Inc.*, 2009 U.S. Dist. LEXIS 1221*32 (M.D. Fla., Jan. 6, 2009) ("In keeping with the principle of awarding statutory damages to deter wrongful conduct, courts often award damages based on some multiple of unpaid licensing fees. [Citation omitted.] Awards of two to three times what the infringer would have paid for licensing fees are common."); *see also Int'l Korwein Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988).

Plaintiff argues that if the Court considers compensatory damages in connection with statutory damages, the award should be determined in relation to Defendants' profits. *See* Docket No. 213 at 8 of 15. However, as this Court has already observed in the Tentative Ruling at page 6, footnote 2 and at page 8:

> It is not entirely clear that Plaintiffs' claim that Defendants generated millions of dollars in revenue *solely* from the infringement of Plaintiffs' songs [is correct]. Plaintiffs proffer various evidentiary items regarding Defendants' revenues which do seem to indicate that revenues as to Live Universe were - for at least one month - over $500,000. *See e.g.* Exhibit 23 to Docket Item No. 211-4. However, the revenues were generated not only from the presence of the lyrics on the sites but also from other endeavors (*e.g*. "hosting" and "social"). *Id.* Further, some of the lyrics on the sites were not owned by Plaintiffs and/or had been licensed by their owners to Defendants' website. *See* Docket Item No. 211-5. Finally, there is no evidence as to what amount of Defendants' revenues from the websites was solely due to their infringement of Plaintiffs' song lyrics.
>
> \* \* \* \*
>
> Moreover, Plaintiffs have painted a picture of Defendants' profits in their motion that is not supported by the evidence. Specifically, Plaintiffs allege that "Defendants Have Profited Substantially From Their Infringement." *See* Docket Item No. 211, p. 29:9-4. However, the evidence that Plaintiffs point to as profit, in fact, shows Defendants incurring substantial losses. *See* Docket Item No. 211-23. Plaintiffs seem to claim that the $500,000 of revenue listed in Defendants' April 2007 financial reports also represents a profit; however, Defendants' financial reports show that their net income after taxes for the Month of April was a loss of $1.6 million.

Further, Plaintiffs assume from language in the Tentative Ruling that this Court has already committed itself to a statutory damages award of least $30,000 per song. After discussing Defendants' willfulness in this case as exemplified by the three

contempt orders issued herein and their continued violation of the Court's preliminary injunction order, it was noted that "damages *should* be at least above the low limit of willful infringement at $30,000. [Emphasis added.]" However, that, language was followed two paragraphs later with the proviso that this Court would seek "to avoid a ridiculously disproportionate damage award . . . ." Further, the former language is awkwardly phrased as if $30,000 is the "low limit of willful infringement." While a statutory award of $30,000 for each willful infringement of multiple copyrights can be granted within the court's discretion (*see e.g. Zomba Enters. v. Panorama Records, Inc.*, 491 F.3d 574, 585-88 (6th Cir. 2007))[1], it is not a mandatory minimum threshold. As stated in *Nimmer on Copyrights*, § 14.04[B]{3}[c] at 14-82, "even a court that finds willfulness can make the minimum award of $750."

    Lastly, the Plaintiffs have requested attorney's fees and costs, both of which will be granted. *See* 17 U.S.C. § 505. Given Defendants' conduct in this litigation which greatly multiplied the proceedings, attorney's fees are especially appropriate.

    In conclusion, the Court:

    1) Will issue a permanent injunction which incorporates the provisions of the previously issued preliminary injunctive relief, *see* Docket Nos. 60, 88, 91 and 93, and Plaintiffs are to prepare a proposed Judgment which includes language as to the final injunctive relief;

    2) Will award statutory damages in the sum of $12,500 per each of the 528 songs shown to be infringed for a total of $6,600,000; and

    3) Will award costs and attorney's fees, and Plaintiffs are to submit declarations

---

[1] The court in *Zomba Enterprises* rejected the defendant's argument that an award of statutory damages that was allegedly thirty-seven or forty-four times the actual damages violates the due process clause in light of the Supreme Court's decision in *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003). *See* 491 F.3d at 586-88. This Court does not necessarily agree with the analysis in *Zomba Entersprises,* especially as applied to the facts in this case.

delineating with sufficient detail that hours spent by each counsel in this matter, along with evidence as to cost expenditures.

Dated: This 9th day of October, 2012

_____
GEORGE H. WU
United States District Judge